IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALAN YOCOM, | No. C 11-04738 SBA (PR) |
| Plaintiff, | **ORDER DISMISSING CLAIMS IN AMENDMENT TO THE COMPLAINT** |
| v. | |
| WARDEN RANDY GROUNDS, et al., | |
| Defendants. _____/ | |

## INTRODUCTION

Plaintiff, a former inmate at the California Correctional Training Facility (CTF), filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights while he was housed at CTF in 2010. In his complaint, Plaintiff named the following Defendants, all of whom are all prison officials at CTF: Warden Randy Grounds; Facility Captain Silva; Lieutenant Whisenhunt; Facility Lieutenant Holman; Chief Medical Officers (CMOs) Gerald A. Ellis and M. Sepulveda; Physician Rosana Lim Javate; Nurse Practitioner Saathoff; Supervising Registered Nurse Lauber; Sgt. Verdesoto; Correctional Officer Leo Amaya; and "1-50 John or Jane Does."

On June 15, 2012, the Court issued an order serving cognizable claims and dismissing with leave to amend: (1) the claim that Defendants Silva, Whisenhunt, Holman, Javate, Saathoff, Lauber, Amaya, and Verdesoto conspired to subject Plaintiff to cruel and unusual punishment; and (2) the claim that Defendants Grounds, Ellis, and Sepulveda were liable as supervisors. Dkt. 15.

On July 2, 2012, Plaintiff timely filed an amendment to the complaint (Dkt. 23), which is now before the Court for review under 28 U.S.C. § 1915A.

## BACKGROUND

In its June 15, 2012 Order, the Court determined that Plaintiff's allegations that Defendants Javate and Saathoff terminated Plaintiff's prescription for "narcotic" medicine

causing him to experience extreme withdrawal symptoms and that they deprived him of proper medication for his severe neck and knee pain stated a cognizable claim for deliberate indifference to Plaintiff's serious medical needs. June 15, 2012 Order at 3. However, the Court concluded that Plaintiff's allegations that Defendants Silva, Whisenhunt, Holman, Javate, Saathoff, Lauber, Amaya, and Verdesoto conspired to terminate his "narcotic" medication in order to subject him to cruel and unusual punishment were conclusory and, thus, did not state a claim upon which relief could be granted.

Also, in the June 15, 2012 Order, the Court determined that Plaintiff had failed to allege how Defendants Grounds, Ellis, and Sepulveda were liable on the basis of their positions as supervisors.

In his amended complaint, Plaintiff makes the following allegations outlined below.

On September 11, 2010, Officer Amaya stated that Plaintiff liked to file lawsuits and then "found" a mysterious "residue" on four items inside Plaintiff's locker. Am. Comp. at 5. On September 13, 2010, "custody" ordered Plaintiff to take a urine test for screening for narcotics. Id. at 2.

On September 15, 2010, Plaintiff received an informational chrono created by Sgt. Verdesoto describing the probable cause that motivated the order for Plaintiff to provide a urine sample for testing. Id. at 6. The chrono stated that Officer Amaya had discovered "a pen cap housing being used as a 'straw'" and drug paraphernalia in Plaintiff's locker. Id.

Plaintiff filed an administrative complaint alleging a conspiracy claim against Sgt. Verdesoto. Id. Lt. Whisenhunt reviewed and denied the claim. Id. On September 21, 2010, Institutional Security Unit (ISU) Officer Dogletto "creat[ed] a presumptive test result of the four items confiscated by Officer Amaya . . . Mysteriously it's a confirmed positive for a 'Morphine Residue.'" Id. at 7.

A September 22, 2010 memorandum authored by Lt. Holman indicated that the test results of Plaintiff's urine sample were "positive" for "morphine." Id. at 2, 7. Lt. Holman placed the memorandum into Plaintiff's confidential records to confirm whether he was prescribed any medication that might have caused the "positive" result. Id. Nurse Lauber

1
2
wrote back creating an "informational chrono" confirming that Plaintiff was prescribed morphine, which would have caused the positive test results. Id.

3
4
5
6
7
8
9
On September 27, 2010, a National Laboratory document was "supposedly" faxed to the prison's ISU showing that Plaintiff's September 13 urine sample was "negative." Id. at 3. The ISU used the "negative result to circumstantially find plaintiff guilty of 'possession of plaintiff's own controlled medication.'" Id. As a result, "[a] 130-day conduct credit forfeiture was imposed or inflicted with full suspended rights and privileges." Id. Plaintiff spent 147 days in disciplinary detention before he could reverse the forfeitures and be removed from detention. Id.

10
11
12
On September 23 and 30, 2010, Lt. Whisenhunt approached Plaintiff's two primary care physicians (PCPs), informed them that Plaintiff was abusing morphine and told them to stop prescribing morphine for Plaintiff. The PCPs agreed to do this. Id.

13
14
15
On October 13, 2010, Lt. Whisenhunt conducted a disciplinary hearing and denied all of Plaintiff's defenses and requests for outside laboratory testing of the residue found on the items in his locker and a re-test of his urine sample. Id. at 8.

16
17
18
19
20
21
On October 28, 2010, Nurse Saatoff evaluated Plaintiff and falsely stated that Plaintiff was tested for methadone at the same time he was tested for morphine and that the test showed that Plaintiff was not taking methadone. Id. at 4, 9. Nurse Saatoff said that CMO Javate had decided that Plaintiff was to be "stripped cold turkey" because he was not taking his prescriptions. Id. On October 30, 2010, Plaintiff was "cold turkeyed" and went through extreme withdrawal, which medical staff refused to treat. Id. at 4.

22
23
24
25
By November 9, 2010, Plaintiff received a copy of the laboratory test that showed that his urine sample had not been tested for methadone. Id. at 4, 9. Plaintiff showed a copy of the laboratory test to Nurse Saatoff and CMO Javate, but they disregarded this written evidence and continued to make false statements in his medical record. Id.

26
27
28
On March 3, 2011, "the Secretary's level issued modification orders to restore the 130 days of forfeitures." Id. at 10. Plaintiff claims that all Defendants "knew they were wrong but continued to punish [him] physically and emotionally, and withhold the necessary

3

narcotics to attempt to alleviate pain." Id.

By September 1, 2011, Plaintiff was re-prescribed morphine, but only after he had attempted to commit suicide. Id. Plaintiff's untreated pain was so severe that he tried to hang himself. Id.

Based on these allegations, Plaintiff claims that Defendants Silva, Whisenhunt, Holman, Javate, Saathoff, Lauber, Amaya, and Verdesoto conspired to deprive him of his properly prescribed morphine to treat his pain and to frame him for having unprescribed narcotics, thus subjecting him to cruel and unusual punishment.

Plaintiff alleges that Warden Grounds and Captain Silva were both aware of the abuse and conspiracy and took no action to stop it. Therefore, he claims that they are liable as supervisors.

## DISCUSSION

### I. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. Id. § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### II. Legal Claims

#### A. Conspiracy Claim

"'A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another

4

which results in damage.'" Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted). A civil plaintiff "'must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'" Id. (citation omitted). Conclusory allegations of conspiracy are not enough to support a § 1983 conspiracy claim. Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989). Rather, a plaintiff must plead with particularity which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of the plaintiff's constitutional rights. Harris v. Roderick, 126 F.3d 1189, 1195-96 (9th Cir. 1997). A conspiracy is not separate cause of action under California law and instead is a way to hold additional persons liable for torts committed by others. Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 784 (Cal. 1979). Similarly, a conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but "may enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." Lacey v. Maricopa County, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

Although the allegations in Plaintiff's amended complaint more specifically state the actions taken by each Defendant that comprised the alleged conspiracy, they are still insufficient to state a claim of conspiracy. As explained above, a conspiracy is more than unlawful acts taken by individually named defendants. To state a claim of conspiracy, Plaintiff is required to allege that the individuals came to an agreement or had a common understanding to be involved in an unlawful arrangement to harm him. Plaintiff's allegations indicate that each individual acted in a way that Plaintiff did not like or that may have been harmful to him. However, based on the allegations in the amended complaint, these acts were done individually by each Defendant; there is no common plan or agreement alleged.

Therefore, the conspiracy claim against the named Defendants is DISMISSED. Because Plaintiff has had an opportunity to remedy the deficiencies in this claim and has failed to do so, this claim is DISMISSED WITHOUT LEAVE TO AMEND. See Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989) (leave to amend need not be given if complaint, as amended, is subject to dismissal) .

### B.     Supervisory Liability Claim

In his original complaint, Plaintiff alleged that the following Defendants were liable as supervisors: Defendants Grounds, Ellis, and Sepulveda. The Court dismissed this claim because Plaintiff failed to link any conduct on the part of these Defendants to the constitutional violations alleged in the complaint. In his amended complaint, Plaintiff alleges that Warden Grounds and Captain Silva "refused to stop the abuse and both were fully aware of the abuse and claims from the plaintiff of the conspiracy to frame him for the possession of his own narcotics prescriptions" and to deprive him of his necessary pain medication. Am. Comp. at 10. This additional allegation is insufficient to state a claim based on supervisory liability.

As explained in the Court's June 15, 2012 Order, liability may be imposed on an individual defendant under § 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. See Leer, 844 F.2d at 633. The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. Id. A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).

Plaintiff's allegations are insufficient for a number of reasons. First, Plaintiff does not mention Defendants Sepulveda or Ellis in his amended complaint. Therefore, the supervisory liability claim against them is dismissed. Second, the allegation that Warden Grounds or Captain Silva knew of Plaintiff's allegations against the other Defendants but

failed to "stop the abuse" is conclusory and does not show their personal involvement in a constitutional deprivation or a causal link between any wrongful conduct and the constitutional violation. Third, as explained above, the Court has found that Plaintiff has failed to allege a conspiracy to deprive him of his constitutional rights. Because there was no conspiracy, any conduct on the part of Warden Grounds or Captain Silva could not have connected them to such a conspiracy.

Therefore, the supervisory liability claim against Grounds, Silva, Ellis, and Sepulveda is DISMISSED. Again, because Plaintiff has had an opportunity to remedy the deficiencies in this claim and has failed to do so, this claim is DISMISSED WITHOUT LEAVE TO AMEND. See Moore, 885 F.2d at 538.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's conspiracy claim against Defendants Silva, Whisenhunt, Holman, Javate, Saathoff, Lauber, Amaya, and Verdesoto is DISMISSED WITHOUT LEAVE TO AMEND.

2. Plaintiff's supervisory liability claim against Defendants Grounds, Silva, Ellis, and Sepulveda is DISMISSED WITHOUT LEAVE TO AMEND.

3. Plaintiff's remaining Eighth Amendment claim against Defendants Javate and Saathoff is proceeding. These Defendants filed separate motions for summary judgment. Plaintiff opposed both motions. These motions will be addressed by the Court in a separate written Order.

IT IS SO ORDERED.

DATED: 6/6/13

SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\CR.11\Yocom4738.Rev AM Comp.wpd         7

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ALAN YOCOM,

    Plaintiff,

v.

RANDY GROUNDS et al,

    Defendant.

Case Number: CV11-04738 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 6, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael Alan Yocom
20731 Rd. 254
Strathmore, CA 93267

Dated: June 6, 2013

Richard W. Wieking, Clerk
By: Lisa Clark, Deputy Clerk